

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-18-00127-CR

**EX PARTE** Leonardo **NUNCIO**

From the County Court at Law No. 1, Webb County, Texas
Trial Court No. 2017 CVJ 002365-C1
Honorable Hugo Martinez, Judge Presiding

Opinion by: Beth Watkins, Justice
Dissenting Opinion by: Liza A. Rodriguez, Justice

Sitting: Patricia O. Alvarez, Justice
Beth Watkins, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: April 10, 2019

AFFIRMED

Authorities charged appellant Leonardo Nuncio with violating section 42.07(a)(1) of the

Texas Penal Code, i.e., the harassment statute. Nuncio filed a pretrial application for writ of habeas

corpus in which he contended sections 42.07(a)(1) and (b)(3) of the harassment statute were

unconstitutionally overbroad and vague. The trial court denied his application. On appeal, Nuncio

contends the trial court erred in denying his application.[1] We affirm the trial court's order denying

Nuncio's application for writ of habeas corpus.

---

[1] In his application, Nuncio challenged the statutory provisions as both facially unconstitutional and unconstitutional as applied. On appeal, however, Nuncio argues only the facial unconstitutionality of the provisions.

**BACKGROUND**

According to the complaint prepared by an investigator from the Laredo Police Department ("LPD"), he met with the complainant at her residence. The complainant told the investigator she met with Nuncio for a job interview. The complainant stated that during the two-hour interview Nuncio stared at her breasts and "made several rude comments." Nuncio allegedly asked the complainant if she liked to "party" and asked "what have you and your boyfriend done (sexually)." He also asked if her breasts were "Ds or double Ds" and told the complainant she was "hot." Nuncio went on to ask the complainant to text her boyfriend "so you all can do a quickie in the back (of [the restaurant])." Nuncio also told the complainant she "can't be a virgin" and work for him.

When the LPD investigator asked to meet with Nuncio, Nuncio refused and stated his intent to sue the complainant's mother for comments she allegedly made on social media about her daughter's encounter with Nuncio. The District Attorney's Office subsequently approved an arrest warrant for Nuncio, and a sworn complaint alleged Nuncio, "with intent to harass, annoy, alarm, abuse, torment, or embarrass [the complainant], … initiate [sic] communication with the complainant, and in the course of the communication, make [sic] an obscene comment, to-wit: making comments about her breasts, asking about her sexual history, and/or telling [her] she could not be a virgin and work for him."

In response to the charge, Nuncio filed an application for writ of habeas corpus, challenging the constitutionality of the harassment statute under which he was charged. After the trial court denied his application, Nuncio timely perfected this appeal.

**ANALYSIS**

In his first two appellate issues, Nuncio challenges the facial constitutionality of sections 42.07(a)(1) and (b)(3) of the Texas Penal Code, arguing the provisions are overbroad and vague.

Section 42.07(a) provides that a person commits the offense of harassment if "with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person … initiates communication and in the course of the communication makes a comment, request, suggestion, or proposal that is obscene[.]" TEX. PENAL CODE ANN. § 42.07(a)(1). "Obscene" is specifically defined as "a patently offensive description of or a solicitation to commit an ultimate sex act, including sexual intercourse, masturbation, cunnilingus, fellatio, or anilingus, or a description of an excretory function." *Id.* § 42.07(b)(3). Nuncio argues the challenged provisions are overbroad because they invade the area of protected speech and are vague in that they deprive a person of adequate notice of the prohibited activity and give law enforcement authorities too much discretion with regard to enforcement. As for his third issue, Nuncio suggests this court should overturn the Supreme Court's opinion in *Miller v. California*, arguing its definition of obscenity is outdated.

### Standard of Review

A defendant may file a pretrial application for writ of habeas corpus to raise a facial challenge to the constitutionality of the statute under which the defendant is charged. *Ex parte Thompson*, 442 S.W.3d 325, 333 (Tex. Crim. App. 2014); *Ex parte Zavala*, 421 S.W.3d 227, 231 (Tex. App.—San Antonio 2103, pet. ref'd). An appellate court generally reviews a trial court's decision to grant or deny an application for writ of habeas corpus under an abuse of discretion standard. *Ex parte Thompson*, 414 S.W.3d 872, 876 (Tex. App.—San Antonio 2013), *aff'd*, 442 S.W.3d at 330. However, when the trial court's ruling is based purely on an application of law, such as the constitutionality of a statute, we review the ruling de novo. *Id.*; *see Ex Parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013), *abrogated in part on other grounds*, TEX. CONST. art. V, § 32; *Lebo v. State*, 474 S.W.3d 405 (Tex. App.—San Antonio 2015, pet. ref'd).

When presented with a challenge to the constitutionality of a statute, an appellate court usually presumes the statute is valid and the Legislature has not acted arbitrarily or unreasonably.

*Lo*, 424 S.W.3d at 14–15. With respect to constitutional provisions other than the First Amendment, a facial challenge to the constitutionality of a statute succeeds only if it is shown the statute is unconstitutional in all of its applications. *State v. Johnson*, 475 S.W.3d 860, 864 (Tex. Crim. App. 2015). However, if the statute in question restricts and punishes speech based on its content, the usual presumption of constitutionality does not apply. *Lo*, 424 S.W.3d at 15. Content-based restrictions are presumptively invalid, and the State has the burden to rebut the presumption. *Id.* A court uses strict scrutiny in its review of a content-based statute. *Thompson*, 442 S.W.3d at 344–45; *Lo*, 424 S.W.3d at 15–16.

*Overbreadth*

Nuncio contends sections 42.07(a)(1) and (b)(3) are unconstitutionally overbroad, violating the First and Fourteenth Amendments of the United States Constitution and Article I, section eight of the Texas Constitution.[2] *See* U.S. CONST. amends. I, XIV; TEX. CONST. art. I, § 8. When, as here, a party challenges a statute as both overbroad and vague, we must first consider the overbreadth challenged. *See Ex parte Maddison*, 518 S.W.3d 630, 636 (Tex. App.—Waco 2017, pet. ref'd) (citing *Ex parte Flores*, 483 S.W.3d 632, 643 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd)).

A statute may be challenged as overbroad, in violation of the First Amendment — and Article I, section 10 — if, in addition to proscribing activity that may be constitutionally forbidden,

---

[2] Nuncio also contends the challenged provisions violate Article I, section 10 of the Texas Constitution. This provision concerns the rights of defendants in criminal prosecutions. It provides that in all criminal prosecutions, the accused has the right to: (1) a speedy public trial by an impartial jury; (2) demand the nature and cause of the accusation against him; (3) refuse to incriminate himself; (4) be heard by himself, counsel, or both; (5) confront the witnesses against him; (6) produce and have evidence admitted; and (7) indictment by a grand jury except under certain circumstances. TEX. CONST. art. I, §10. Nuncio provides no argument or authority challenging sections 42.07(a)(1) and (b)(3) with regard to these constitutional protections. Rather, his argument is limited to a challenge that the statutory provisions are overbroad under the First Amendment of the United States Constitution and article I, section 8 of the Texas Constitution. *See* U.S. CONST. amend. I; TEX. CONST. art. I, § 8. Accordingly, we do not consider his overbreadth argument as a challenge under article I, section 10 of the Texas Constitution.

it sweeps within its coverage a substantial amount of expressive activity that is protected by the First Amendment. *See Scott v. State*, 322 S.W.3d 662, 665 n.2 (Tex. Crim. App. 2010), *abrogated in part on other grounds*, *Wilson v. State*, 448 S.W.3d 418, 423 (Tex. Crim. App. 2014). However, the overbreadth doctrine "is strong medicine that is used sparingly and only as a last resort." *Johnson*, 475 S.W.3d at 865. To qualify as unconstitutionally overbroad, "the statute must prohibit a substantial amount of *protected* expression and the danger that the statute will be unconstitutionally applied must be realistic and not based on 'fanciful hypotheticals.'" *Id.* (emphasis added) (quoting *United States v. Stevens*, 559 U.S. 460, 485 (2010) (Alito, J., dissenting)). Laws restricting the exercise of rights under the First Amendment are facially overbroad only if the impermissible applications of the law are real and substantial when judged in relation to the statute's legitimate sweep. *Maddison*, 518 S.W.3d at 636. We must uphold a challenged statute if we can ascertain a reasonable construction that renders it constitutional. *Id.*; *Flores*, 483 S.W.3d at 643.

The State argues the provisions challenged by Nuncio are not unconstitutionally overbroad because under a reasonable construction, they do not prohibit expression protected by the First Amendment. More specifically, the State contends the statute does not implicate the First Amendment because it proscribes the use of obscenity — unprotected speech — for purposes of harassment. In other words, the State argues the harassment statute's "plain legitimate sweep" is to protect a victim from obscene communications intended to harass, annoy, alarm, abuse, torment, or embarrass. *See* TEX. PENAL CODE §§ 42.07(a)(1), (b)(3). Thus, because the only speech or communications prohibited by sections 42.07(a)(1) and (b)(3) are those that are obscene and intended to injure another, and obscenity is defined in subsection (b)(3) more narrowly than by the Supreme Court in *Miller v. California*, the provisions do not criminalize conduct protected by the First Amendment and are not overbroad.

To determine whether the State is correct, we must first determine the protection afforded by the free-speech guarantee of the First Amendment and then determine the meaning of the challenged statutory provision. *See Scott*, 322 S.W.3d at 668. The First Amendment, as applicable to the states through the Fourteenth Amendment, prohibits laws that abridge freedom of speech. U.S. CONST. amends. I, XIV. Article I, section 10 of the Texas Constitution provides similar protections.[3] TEX. CONST. art. I, § 10. The constitutional guarantee of free speech generally protects the free communication and receipt of ideas, opinions, and information. *Scott*, 322 S.W.3d at 668 (citing *Red Lion Broad. Co. v. F.C.C.*, 395 U.S. 367, 390 (1969); *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72 (1942)). However, the First Amendment has never been treated as an absolute. *Miller v. California*, 413 U.S. 15, 23 (1973); *Scott*, 322 S.W.3d at 668. As the Supreme Court recognized *United States v. Stevens*, States may proscribe certain categories of speech without violation of First Amendment protections. 559 U.S. 460, 468–69 (2010) (recognizing obscenity, defamation, fraud, incitement, and speech integral to criminal conduct not constitutionally protected); *see Cohen v. California*, 403 U.S. 15, 20 (1971) (recognizing States are free to ban obscenity, fighting words, and intrusion into substantial privacy interests of others). Thus, "[o]therwise proscribable conduct does not become protected by the First Amendment simply because the conduct happens to involve the written or spoken word." *State v. Stubbs*, 502

---

[3] The only cases in which courts have held the Texas Constitution creates a higher standard have involved prior restraints in the form of court orders prohibiting or restricting speech. *Comm'n for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 434–35 (Tex. 1998); *see San Antonio Express-News v. Roman*, 861 S.W.2d 265, 267–68 (Tex. App.—San Antonio 1993, orig. proceeding). This is not a prior restraint case. Moreover, when neither party argues the Texas Constitution offers greater protection, we treat the state and federal free exercise guarantees as co-extensive. *State v. Valerie Saxion, Inc.*, 450 S.W.3d 602, 613 (Tex. App.—Fort Worth 2014, no pet.) (citing *HEB Ministries, Inc. v. Tex. Higher Educ. Coordinating Bd.*, 235 S.W.3d 627, 649–50 (Tex. 2007)); *see generally Luquis v. State*, 72 S.W.3d 355, 364–65 (Tex. Crim. App. 2002) (relying on Texas Supreme Court decision when addressing matter of state constitutional law). Nuncio has not argued article I, section 8 of the Texas Constitution provides greater protection than that provided by the First Amendment of the United States Constitution. Thus, we treat the protections provided under both constitutions as co-extensive. *See Valerie Saxion, Inc.*, 450 S.W.3d at 613.

S.W.3d 218, 226 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (citing *United States v. Alvarez*, 567 U.S. 709, 717 (2012)).

Having set forth the protection provided by the First Amendment, we consider the plain meaning of the acts proscribed by sections 42.07(a)(1) and (b)(3) to determine what they encompass. *See Scott*, 322 S.W.3d at 668; *Maddison*, 518 S.W.3d at 636. Under the principles of statutory construction, we must construe a statute according to the plain meaning of its language, unless the language is ambiguous or the interpretation would lead to absurd results the legislature could not have intended. *Ex parte Perry*, 483 S.W.3d 884, 902 (Tex. Crim. App. 2016); *Ex parte Zavala*, 421 S.W.3d 227, 231 (Tex. App.—San Antonio 2013, pet. ref'd). In determining the plain meaning of a statute, we read the words and phrases in context, construing them according to rules of grammar and common usage. *Zavala*, 421 S.W.3d at 231 (citing TEX. GOV'T CODE ANN. § 311.011(a)). However, words that have acquired a technical or particular meaning, whether by legislative definition or otherwise, must be construed accordingly. *Maddison*, 518 S.W.3d at 636–37 (citing TEX. GOV'T CODE § 311.011(b)).

As set out above, section 42.07(a) provides that a person commits the offense of harassment if "with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person … initiates communication and in the course of the communication makes a comment, request, suggestion, or proposal that is obscene[.]" TEX. PENAL CODE § 42.07(a)(1). "Obscene" is specifically defined as "a patently offensive description of or a solicitation to commit an ultimate sex act, including sexual intercourse, masturbation, cunnilingus, fellatio, or anilingus, or a description of an excretory function." *Id.* § 42.07(b)(3). We hold sections 42.07(a)(1) and (b)(3) are not ambiguous.

As for section 42.07(a)(1), the text first requires the actor to have the specific intent to inflict harm on the victim in the form of one of the six listed types of emotional distress. *Id.* § 42.07(a)(1); *see Scott*, 322 S.W.3d at 669. It then requires the alleged perpetrator to initiate a

communication during which he makes obscene comments or suggestions. TEX. PENAL CODE § 42.07(a)(1). Section 42.07(b)(3) defines the term "obscene," using a narrower definition than the *Miller* prohibition against the use of "patently offensive" descriptions of "sexual conduct," limiting the term "obscene" to a description of an "ultimate sex act" involving genital or anal contact, or an excretory function. *Id.* § 42.07(b)(3); *see Miller*, 413 U.S. at 24. The definition of obscenity, as recognized by the court of criminal appeals, provides "a meaning readily comprehended by the average person." *Lefevers v. State*, 20 S.W.3d 707, 712 (Tex. Crim. App. 2000). Thus, the provisions challenged by Nuncio plainly proscribes the conduct of initiating a communication and therein making specific obscene remarks with the intent to emotionally harm the person to whom the communication is made. TEX. PENAL CODE § 42.07(a)(1). Based on our construction, the proscribed conduct most certainly involves speech. The question is whether the conduct is entitled to First Amendment protection. *See Maddison*, 518 S.W.3d at 637.

As noted above, the State has authority to regulate and proscribe certain categories of speech because those categories are not protected by the First Amendment. *See Stevens*, 559 U.S. at 668–69; *Cohen*, 403 U.S. at 20. One of those categories is obscenity. *See generally Miller*, 413 U.S. at 2l4 (holding obscenity is not protected by the First Amendment). The challenged statutory provisions are not susceptible of application to communicative conduct that is protected by the First Amendment, i.e., they do not implicate the free-speech guarantee, because by their plain text they are directed only at persons who, with intent to emotionally harm another, make obscene remarks. *See* TEX. PENAL CODE § 42.07(a)(1), (b)(3). There is nothing in the statutory provisions to suggest they are broad enough to suppress protected speech. *See id.* Nuncio's numerous hypotheticals suggesting applications of the statute that might reach protected speech are insufficient to establish overbreadth. *See Johnson*, 475 S.W.3d at 865 (holding challenged statute must prohibit substantial amount of protected expression and danger of unconstitutional

application cannot be based on fanciful hypotheticals). Accordingly, we hold sections 42.07(a)(1) and (b)(3) are not constitutionally overbroad as they do not prohibit a substantial amount of protected speech, but merely prohibit communication of unprotected obscenities intended to harm the person to whom they are directed. A person whose conduct violates sections 42.07(a)(1) and (b)(3) is not engaging in a legitimate communication of ideas, opinions, or information, but has only the intent to inflict emotional distress for its own sake. *See Scott*, 322 S.W.3d at 670.

*Vagueness*

Nuncio also challenges sections 42.07(a)(1) and (b)(3) based on vagueness. He argues the provisions are unconstitutionally vague in that they fail to provide adequate notice of the prohibited conduct and encourage arbitrary and capricious prosecution. Nuncio contends, based generally on the statute's use of "another," that a person of ordinary intelligence cannot determine who is the victim, leaving law enforcement authorities with unfettered discretion to decide under what circumstances to enforce the provision. Nuncio seems to suggest the challenged provisions are so vague that prosecution is possible — and wholly within the discretion of law enforcement authorities — when the prohibited communication is overheard by random persons. Nuncio argues that due to vagueness, the statutory provisions violate his due process rights under the Fifth and Fourteenth Amendments, his right to know the nature of the accusation against him under Article 1, section 10 of the Texas Constitution, and his due course of law rights under Article 1, section 19 of the Texas Constitution. *See* U.S. CONST. amends. V, XIV; TEX. CONST. arts. I, §§ 10, 19.

A statute is unconstitutionally vague and violative of due process if it fails to provide a person of ordinary intelligence fair notice of what the statute prohibits or authorizes or encourages seriously discriminatory enforcement. *Maddison*, 518 S.W.3d at 639–40 (quoting *Ex parte Bradshaw*, 501 S.W.3d 665, 677–78 (Tex. App.—Dallas, 2016, pet. ref'd) (citing *United States v. Williams*, 553 U.S. 285, 304 (2008)). In other words, a statute is unconstitutionally vague if

persons of common intelligence must guess at its meaning and differ about its proper application. *Maddison*, 518 S.W.3d at 639–40. All criminal laws must give fair notice about what activity is made criminal. *Bradshaw*, 501 S.W.3d at 67 (citing *Bynum v. State*, 767 S.W.2d 769, 773 (Tex. Crim. App. 1989) (en banc)). However, courts do not require that statutes be mathematically precise; rather, statutes need only provide fair warning in light of common understanding and practices. *Ex parte Paxton*, 493 S.W.3d 292, 305 (Tex. App.—Dallas 2016, pet. ref'd) (en banc). A statute is not unconstitutionally vague simply because the words or terms used are not specifically defined. *Wagner v. State*, 539 S.W.3d 298, 314 (Tex. Crim. App. 2018). Rather, words or phrases within a statute must be read in the context in which they are used. *Id.* Statutory provisions satisfy vagueness requirements if they "convey[] sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Id.* (quoting *Jordan v. De George*, 341 U.S. 223, 231–32 (1951)).

When a statute does not implicate free speech under the First Amendment, a person challenging that statute for vagueness must establish it was unduly vague as applied to his own conduct. *Wagner*, 539 S.W.3d at 314; *Scott*, 322 S.W.3d at 670–71. If First Amendment rights are implicated, the statute in question must also be sufficiently definite to avoid chilling protected speech or expression, and a challenger may complain of vagueness of the statute as it may be applied to others. *Wagner*, 539 S.W.3d at 314; *Scott*, 322 S.W.3d at 670–71. As we explained in our analysis of Nuncio's overbreadth challenge, sections 42.07(a)(1) and (b)(3) do not infringe upon any constitutionally protected speech or conduct. Accordingly, we decline to adopt the more stringent vagueness standard that would apply to a statute that "abuts upon sensitive areas of First Amendment freedoms." *Wagner*, 539 S.W.3d at 315.

Applying the plain language of sections 42.07(a)(1) and (b)(3) to this particular case, we hold the challenged provisions are not unconstitutionally vague. We conclude a person of ordinary

intelligence would recognize the provisions at issue prohibit a person from starting a communication with a person and during the course of the communication, making obscene comments, requests, or suggestions in an effort to emotionally harm the person to whom the comments, requests, or suggestions are made. The provisions are more than adequate to allow those of ordinary intelligence to recognize the term "another," as used in the statute, is a reference to the victim, that is, the person with whom the alleged perpetrator was communicating and intending to emotionally harm. Likewise, the provisions do not authorize or encourage discriminatory enforcement, but permit enforcement only when obscene comments or remarks are directed by the perpetrator to a particular victim with intent to harm. *See Maddison*, 518 S.W.3d at 639–40.

Moreover, even if the First Amendment is implicated, the statutory provisions cannot be interpreted to suggest that obscene comments made and heard in the hypothetical ether are prohibited. Rather, to sustain a prosecution, it is clear a person must engage in obscene communication with a particular person with the intent that the particular person feel harassed, annoyed, alarmed, abused, tormented, or embarrassed. Accordingly, we hold sections 42.07(a)(1) and (b)(3) are not unconstitutionally vague.

*Request to Overturn Miller v. California*

In 1974, the Supreme Court set out a test for obscenity in *Miller v. California*. 413 U.S. at 24. The Court held material is obscene when: (1) an average person applying contemporary community standards would find that when taken as a whole, the material appeals to the prurient interest; (2) the material describes or depicts, in a patently offensive way, sexual conduct specifically defined by applicable state law; and (3) the material, when taken as a whole, lacks serious literary, artistic, political, or scientific value. *Id.* Nuncio contends this standard is no longer "valid, accurate, and/or an effective test for distinguishing obscenity from protected speech"

in the Internet era and asks that we reject it in our evaluation of his challenges to the constitutionality of sections 42.07(a)(1) and (b)(3).

Since *Miller* was decided, the Texas Court of Criminal Appeals has continuously applied its test for obscenity in addressing allegations of unconstitutionality in numerous contexts. *See, e.g., Lo*, 424 S.W.3d at 21 (recognizing *Miller* defines obscenity); *Lefevers*, 20 S.W.3d at 709 (recognizing Texas Legislature drafted harassment statute "with an eye toward the constitutional definition of obscenity" as set out in *Miller*); *Davis v. State*, 658 S.W.2d 572, 578 (Tex. Crim. App. 1983) (en banc) (holding that *Miller* sets forth "the test the States of the Union must follow when they seek to regulate or control obscenity"); *West v. State*, 514 S.W.2d 433, 442 (Tex. Crim. App. 1974) (op. on reh'g) (applying *Miller* in determining constitutionality of Texas obscenity statute). As an intermediate appellate court, we are bound by pronouncements of the court of criminal appeals. *State v. Nelson*, 530 S.W.3d 186, 190 (Tex. App.—Waco 2016, no pet.) (citing *Wiley v. State*, 112 S.W.3d 173, 175 (Tex. App.—Fort Worth 2003, pet. ref'd)); *De Leon v. State*, 373 S.W.3d 644, 650 n.3 (Tex. App.—San Antonio 2012, pet. ref'd). Accordingly, we may not — as Nuncio suggests — overturn *Miller's* definition of obscenity. *See Nelson*, 530 S.W.3d at 190; *De Leon*, 373 S.W.3d at 650 n.3.

## CONCLUSION

Based on the foregoing analysis, we hold sections 42.07(a)(1) and (b)(3) of the Texas Penal Code are neither unconstitutionally overbroad nor vague. We further hold we are precluded from overturning *Miller*, which has been adopted and applied by the court of criminal appeals since it was decided in 1974. Accordingly we overrule Nuncio's issues and affirm the trial court's order denying his application for writ of habeas corpus.

Beth Watkins, Justice

Publish